UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-21795-CIV-SIMONTON

[CONSENT CASE]

FATIMA DEL SOCORRO MARIN JIRON et al.,

        Plaintiffs,

vs.

GAJOVA, INC. d/b/a SUNSET GARDENS III et al.,

        Defendants.

_____

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Comes now Plaintiffs, by and through undersigned counsel and hereby opposes Defendants' Motion for Summary Judgment, and in support thereof state:

**MEMORANDUM OF LAW**

1. Defendants make four arguments:

    a. "Defendant Jorge E. Valle ("Valle") was not Plaintiffs' employer";

    b. "There is no individual or enterprise coverage";

    c. "Defendants are not an 'Institution' as defined by the FLSA"; and

    d. "Plaintiffs fall under the 'companionship' exemption."

2. In response to these arguments, Plaintiffs respond:

    a. Defendants argument, if true, would have merit, however, this is a contested issue of fact which is not proper for adjudication in Summary Judgment;

    b. Defendants misunderstand the applicable legal standard as to what is covered under the FLSA, and, even if the law were applied correctly, Defendants would still not be entitled to Summary Judgment;

    c. Defendants misstate the law regarding the 29 U.S.C. § 203 exemption as well as the facts, and this is properly addressed below as well as in Plaintiffs' Motion for Partial Summary Judgment [DE 68]; and

      **d.**      The companionship exemption does not apply to nursing homes/assisted living facilities because those do not qualify as "private homes," which is a statutory requirement for the companionship exemption.

## I. Argument

"Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In Celotex Corp. v. Catrett, the Supreme Court describes that the moving party in summary judgment bears the initial burden of establishing the nonexistence of triable fact. 477 U.S. 317 (1986). If the movant is successful on this, the burden shifts to the non-moving party who must then come forward with sufficient evidence of every element that he or she must prove. Id.

In this matter, Defendants' stated an argument that Jorge E. Valle was not Plaintiffs' employer and, instead, it was Nidia Valle. If that were true, then Jorge Valle may escape liability. Plaintiffs contest this argument with facts showing that Mr. Valle was sometimes the co-employer of Defendants and sometimes the only principle and manager, exposing a critical fact which is materially at issue foreclosing the opportunity for Summary Judgment.

Defendants remaining arguments do not state an argument for summary judgment as a matter of law. Defendants second argument, that there is no individual or enterprise coverage, states an incorrect legal standard as to what "enterprise" means, and is thus faulty as a matter of law. The third argument addresses the applicability of whether Defendants are an institution under 29 U.S.C. § 203(s)(1)(B). Defendants do not actually provide facts or allegations that evidence that Defendants are a private home. In fact, as Plaintiffs expressed in their Motion for Summary Judgment [DE 68], Defendants have admitted that they are an institution and all facts

so point to the fact that they are a nursing home. Similarly, Defendants do not provide any evidence to support the material facts necessary to fulfill their burden as a movant under Summary Judgment. While Plaintiffs assert that Defendants were not successful in stating a proper Motion for Summary Judgment in regard to arguments 2-4, Plaintiffs nevertheless have provided facts and argument to contest Defendants arguments in the event that this Court does not so agree.

### A.     "Defendant Jorge E. Valle ("Valle") was not Plaintiffs' employer."

Whether Defendant Jorge E. Valle was Plaintiffs' employer is a contested fact which is challenged by Plaintiffs. Defendants heavily emphasize that Nidia Valle was asserted to be the employer on various occasions by Plaintiffs. While these facts regarding Nidia Valle are true, this does not negate the fact that Defendant Jorge E. Valle was also the employer during much of Plaintiffs' employment. He decided the schedule and hours of Plaintiffs, and otherwise performed administrator and managerial functions in relation to Plaintiffs' work.

The term "employer" ought be interpreted more broadly under the Act than common law for remedial purposes. *See, e.g.,* Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2nd Cir. 1999); Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991), *citing* McLaughlin v. Seafood, Inc., 867 F.2d 875, 877 (5th Cir. 1989); Donovan v. Agnew, 712 F.2d 1509, 1510 (1st Cir. 1983); Falk v. Brennan, 414 U.S. 190, 195 (1973).

Further, multiple employers may be responsible for compliance with the FLSA within one business organization. *See*, Elliott Travel & Tours, Inc., 942 F.2d at 965; Agnew, 712 F.2d at 1510. In the Court of Appeals for the Eleventh Circuit, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid

wages." Patel, 803 F.2d at 637-38, *quoting* Agnew, 712 F.2d at 1511. Liability may also be found even if control is restricted or exercised only occasionally as such does not diminish the significance of the existence of such control. Herman, 172 F.3d at 139, *quoting*, Donovan v. Janitorial Servs, Inc., 672 F.2d 528, 531 (5th Cir. 1982).

Defendants assert that it is "factually undisputed that Defendant Jorge Valle did not have any operational control over Sunset II or Sunset III." This is absolutely untrue. Defendant Jorge Valle was involved in the following ways: delivering supplies and groceries to Sunset II and Sunset III, paying Plaintiffs, and doing everything else that Nidia Valle did as the Plaintiffs' employer. (Aracellys Marin's Responses to Defendants' Interrogatories, ¶ 7). [DE 65-3]. (Flor Alvarez Depo Transcript, page 16, 18). [DE 65-6].

Thus, it is a contested issue of material fact whether Jorge Valle was an employer. While Nidia Valle was an employer during much of the relevant time period, Jorge Valle shared duties and was a co-employer and shared responsibilities with Nidia Valle. Even if Nidia Valle was the sole employer during the times that she employed Plaintiffs, then the time which Nidia Valle was not present and did not manage Sunset II or Sunset III are not accounted for. It should not be disputed that it would have been impossible for Nidia Valle to have been the employer during the entire period of Plaintiffs' employment, as it is not disputed that Nidia Valle left the country in 2013. The finder of fact would necessarily need to determine at what time Jorge Valle took over for Nidia Valle.

Thus, there is a genuine issue as to material fact as to whether Jorge Valle is an employer of Plaintiffs under the FLSA. Summary judgment should not be entered on this issue because there exists a contested issue of material fact.

  B.  **"There is no individual or enterprise coverage."**

  Defendants incorrectly state that there is no enterprise coverage for the purpose of FLSA coverage because the corporate Defendants did not make more than $500,000.00 per year during the relevant time period and did not create goods in interstate commerce. This is absolutely an incorrect statement of law. An organization can be an enterprise under the FLSA if it fits the $500,000 with goods in commerce requirement (29 U.S.C. § 203 (s)(1)(A)), **or** if the business is an institution (29 U.S.C. § 209(s)(1)(B)).

  As Plaintiffs argued in their Motion for Summary Judgment, dated April 15, 2015 [DE 68], Defendants are an institution. Plaintiffs request that this Court refer to said Summary Judgment Motion for the particularities of Plaintiffs' arguments.

  Defendants make a legislative intent argument in footnote 8, in which they assert that Defendants "would not have been able to operate at all if they paid Plaintiffs the wages they seek," and "[s]urely, Congress could not intend that compliance with the FLSA would result in driving Sunset II out of business altogether." While Congress surely does not have a personal vendetta against Sunset II, the implied argument is that Congress's intent was not to cause small businesses to go out of business through the application of labor law. Congress' intent was for businesses to treat its employees fairly and under certain uniform guidelines so that all enterprises would be on a fair playing field.

  Plaintiffs are only seeking enforcement of the FLSA as it pertains to work actually performed for Defendants and under their direction. Defendants directed Plaintiffs to be continuously available during every hour of every day of the week. Defendants could have avoided this result if they hired more employees to allow the other workers time off the clock. To the extent that Defendants could not operate unless they violated the FLSA, then Congress

certainly *did* intend to have them shut down.  Part of the rationale for the FLSA is to ensure that no company has an unfair advantage through the exploitation of its workers. If Defendants are permitted to exploit employees at an illegal wage, then they have a competitive advantage against other companies who must pay their employees a legal and living wage, as well as give their employees necessary time off.

### C. "Defendants are not an 'Institution' as defined by the FLSA."

Plaintiffs assert that they are not an "institution."  Defendants refer to one of the definitions of "enterprise" under the FLSA.  Particularly, 29 U.S.C. § 203 states:

> (s)(1) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that—[…]
>  (B) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution

Thus, "enterprise" coverage under the FLSA is automatic for any business engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises.  Defendants argue that, "Sunset II and Sunset III provided a private residence to the six individuals living on the premises and who needed assistance with daily living."  All of the residents referenced by Defendants during the relevant time period were, at the very least, sick and aged, but there is no "requirement that a resident be 'elderly.'"

Plaintiffs moved for Summary Judgment on this particular issue in their Motion for Summary Judgment, dated April 15, 2015 [DE 68].  Plaintiffs request that this Court refer to said Summary Judgment Motion for the particularities of Plaintiffs' arguments.  Generally, Defendants have admitted that they are a facility devoted to the care for the aged.  Defendants are licensed as an Assisted Living Facility. [DE 65-13] and [DE 65-15]. In fact, the Defendants' licenses provided in support of their Motion for Summary Judgment state, in part, that the

licenses are for "Assisted Care Services" with a "Specialty License" for "Limited Nursing Services." [DE 65-13]

While Defendants state that they are not an institution, they do not actually provide <u>any</u> arguments or facts which state otherwise. Defendants only pick apart potential arguments that Plaintiffs could have used, and describe these factors as not being dispositive. This is not sufficient to make a prima facie motion for summary judgment.

### D.     "Plaintiffs fall under the 'companionship' exemption."

Defendants assert that the companionship exemption applies to Plaintiffs because the nursing home was a private residence. This argument is borderline disingenuous; for this argument to apply, the property must be someone's private home, not a nursing home. The grounds cited by Defendants is that "[e]ach Plaintiff lived as a family," and because "each resident permanently resided on the premises of [Defendants] and considered the residence their own home where they received correspondence and visitors." [DE 64]. It is not as Plaintiffs worked at a private home resembling the "Golden Girls" – "Sunset II" and "Sunset III" are nursing homes run by Defendants' Gajova, <u>Inc.</u> and Jogava, <u>Inc.</u>

"Like all other exemptions to the FLSA, the companionship exemption must be 'narrowly construed.'" <u>Buckner v. Florida Habilitation Network, Inc.</u>, 489 F.3d 1151, 1154 (11th Cir. 2007), *citing* <u>Mitchell v. Ky. Fin. Co.</u>, 359 U.S. 290, 295 (1959).

Nursing homes like Defendants' do not apply under the companionship exemption. The exemption reads:

> any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)

29 U.S.C.A. § 213 (a)(15).  The major question is whether Plaintiffs are employed for "domestic service" as articulated by the Secretary of the Department of Labor.  The analysis naturally must then turn towards the Department of Labor's definitions.  Relevantly:

> The term domestic service employment means services of a household nature performed by an employee in or about a private home (permanent or temporary). The term includes services performed by employees such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use. This listing is illustrative and not exhaustive.

29 C.F.R. § 552.3.

Critically, 29 C.F.R. § 552.3 states that the companionship exemption does not include employees who work in settings outside of a private home.  *See* Buckner v. Florida Habilitation Network, Inc., 489 F.3d 1151, 1154 (11th Cir. 2007).  This is a reasonable interpretation in light of Congress' intent in creating this exemption.

> It is the intent of the committee to include within the coverage of the Act all employees whose vocation is domestic service. However, the exemption reflects the intent of the committee to exclude from coverage . . . companions for individuals who are unable because of age and infirmity to care for themselves. But it is not intended that trained personnel such as nurses, whether registered or practical, shall be excluded. People who will be employed in the excluded categories are not regular bread-winners or responsible for their families' support. The fact that persons performing . . . services as companions do some incidental household work does not keep them from being . . . companions for purposes of this exclusion.

Senate Report No. 93-690, p. 20; House Report No. 93-913, pp. 36.

Congress was attempting to provide a minimum wage and overtime exclusion for friendly neighbors, not full-time employees.

> Senator Williams, Chairman of the Senate Subcommittee on Labor and the Senate floor manager of the 1974 amendments to the FLSA, described individuals who provided companionship services as "elder sitters" whose primary responsibility was "to be there and to watch" over an elderly person or person with an illness, injury, or disability in the same manner that a babysitter watches over children, "not to do household work."

Application of the Fair Labor Standards Act to Domestic Service, 78 FR 60454-01, *citing* 119 Cong. Rec. S24773, S24801 (daily ed. July 19, 1973). This rule was further explained in a 1975 administrative opinion:

> With regard to its legislative history, the Congress intended that domestic service be considered as relating to services of a household nature performed by an employee in or about the private home of the person by whom he or she is employed. Services performed outside of a private home would not be within the term "domestic service." Accordingly, the exemption would not apply to employees providing care to institutionalized persons ... even though they are in a residential home setting.

Wage and Hour Opinion WH–368, 91 W.H.M. 1031 (Nov. 25, 1975). Thus, it was Congress and the DOL's intent to strictly limit the companionship exemption. Nevertheless, courts have

Continued on the following page.

interpreted the companionship exemption a little more broadly than intended, which led the DOL to correct any misunderstanding with their new interpretation on January 1, 2015.[1]

Courts have filled in the gaps left by the old DOL interpretation because neither the FLSA nor the regulations define the exact meaning of "private home"; thus, courts have looked to the particular living arrangement to determine if it is a "private home." Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 301 (D. Md. 2007)("Courts addressing the companionship services exception have held that determination of whether a particular employee performs services in a private home requires a case-by-case, fact-specific inquiry."); Bowler v. Deseret Vill. Ass'n, Inc., 922 P.2d 8, 13 (Utah 1996); Linn v. Developmental Servs. of Tulsa, Inc., 891 F.Supp. 574, 579 (N.D.Okla.1995).

A sister court has explained some factors influencing whether a place is a private home:

---

[1]  It should be noted that the rules cited by Defendants have been reinterpreted effective January 1, 2015 to explicitly exclude third-parties' from that exemption.  This is to clarify/restore Congress' intent that this exemption only apply to family and casual elder "sitters", and not professionals.  29 C.F.R. § 552.109(a)(effective January 1, 2015):

> Third party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services. However, the individual or member of the family or household, even if considered a joint employer, is still entitled to assert the exemption, if the employee meets all of the requirements of § 552.6.

*see* Department of Labor, Domestic Service Final Rule Frequently Asked Questions (available at: http://www.dol.gov/whd/homecare/faq.htm) ("Today, direct care workers are, for the most part, not the elder sitters that Congress envisioned when it enacted the companionship services exemption in 1974, but are instead professional caregivers"); *see*, *e.g.,* 119 Cong. Rec. 24801 (1973) (statement of Sen. Burdick) ("I am not concerned about the professional domestic who does this as a daily living," but rather about "people who might have an aged father, an aged mother, an infirm father, an infirm mother, and a neighbor comes in and sits with them").

This is a changed DOL agency interpretation to a pre-existing statute, so, is potentially retroactive.  Russell Weaver, *Retroactive Regulatory Interpretations: An Analysis of Judicial Responses*, 62 NOTRE DAME L. REV. 167 (1986) (available at: http://scholarship.law.nd.edu/cgi/viewcontent.cgi?article=2272&context=ndlr. If the new interpretation were to be applied to the instant circumstance, there would be no question that the exemption does not apply.  This text is relegated to a mere footnote to emphasize that the exemption does not apply even if applying the DOL interpretations prior to January 1, 2015.

> Turning first to the issue of whether the services were performed in a private home, Courts have utilized a number of factors in determining whether nontraditional housing, such as group housing, is a "private home". These factors include: (1) the source of the home's funding, the public's access to the home, the profit or non profit status of the organization, and the size of the organization; (2) who rented the property, who had access to the property and who paid the rent; and (3) the residents' possessory interest in the home, the residents' control of access to their homes, and the residents' ability to determine their day to day conduct.

Ekwem v. Creative Concepts Learning Facility, Inc., No. 5:08-CV-350-OC-GRJ, 2010 WL 2367305, at *3 (M.D. Fla. June 14, 2010); *see also* Bowler v. Deseret Vill. Ass'n, Inc., 922 P.2d 8, 13-14 (Utah 1996).  Other important factors to consider are whether a resident has keys to the home, whether the rules provide residents with freedom for the residents in a way that is congruent with private homes.  Madison v. Res. for Human Dev., Inc., 233 F.3d 175, 183-84 (3d Cir. 2000).  When a dispute as to the nature of the property is at issue, then summary judgment is not proper.  Ekwem v. Creative Concepts Learning Facility, Inc., No. 5:08-CV-350-OC-GRJ, 2010 WL 2367305, at *3 (M.D. Fla. June 14, 2010).

In this matter, it should be clear that Defendants are a nursing home and not a private home.  The residents have little to no autonomy.  Residents did not have keys and were not allowed to leave unattended. (Affidavit of Flor de Maria Marin Alvarez), (Affidavit of Aracellys del Socorro Jiron Marin). Residents do not have a possessory interest in their living areas. Id. The majority of the income from the business came from Medicare and Medicaid, and not rental income. (Depo. Transcript of Steven Robert Goldey, page 9). Residents are wholly dependent on the nursing care and assistance of employees like Plaintiffs.  In short, Defendants are a quintessential nursing home.

Also, it should be noted that private homes do not need to be licensed, while businesses do.  As Defendants admitted, they are licensed by the state of Florida as Assisted Living Facilities.  *See* Defendants' Motion for Summary Judgment [DE 64] at 7.  If it were truly a

private home, it would not need to be licensed.[2]  Defendants' argument that the residents consider it to be their home has no merit.  Any institution for the aged would require that their residents live there.

While it is clear from Plaintiffs' perspective that they were employed by a business and not a private home, to the extent there is any doubt this Court should nevertheless find in favor of Plaintiff on this issue.  The "companionship" exemption should be narrowly construed regarding a fact specific inquiry – something that is not appropriate for resolution in summary judgment.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court deny Defendants' Motion for Summary Judgment.

>                         Respectfully submitted,
>
>                         Elizabeth O. Hueber
>                         J. H. Zidell, P.A.
>                         Attorneys for Plaintiff
>                         300-71st Street, Suite 605
>                         Miami Beach, Florida 33141
>                         Tel: (305) 865-6766
>                         Fax: (305) 865-7167
>
>                         By:__/s/ Elizabeth O. Hueber_____
>                              Elizabeth O. Hueber
>                              Florida Bar No.: 0073061

---

[2]   Fla.Stat. 429.04: "The following [is] exempt from licensure under this part: […] (d)Any person who provides housing, meals, and one or more personal services on a 24-hour basis in the person's own home to not more than two adults who do not receive optional state supplementation. The person who provides the housing, meals, and personal services must own or rent the home and reside therein."

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via CM/ECF to Blanca Rosa Sordo, Esq., Martinez & Sordo, PA, 7300 North Kendall Drive, Suite 380, Miami, Florida 33156, fax: (305) 670-7065, e-mail: blanca@martinezsordolaw.com, on May 4, 2015.

> J. H. Zidell, P.A.
> Attorneys for Plaintiff
> 300-71st Street, Suite 605
> Miami Beach, Florida 33141
> Tel: (305) 865-6766
> Fax: (305) 865-7167
>
> By:__/s/ Elizabeth O. Hueber_____
>    Elizabeth O. Hueber
>    Florida Bar No.: 0073061